# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| ROYER RAMIREZ RUIZ,<br><br>                Plaintiff,<br><br>v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC.,<br>a California company,<br><br>                Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW Plaintiff, Royer Ramirez Ruiz, and states and alleges the following facts and causes of action against the Defendant, Zoom Video Communications, Inc.:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff's 42 U.S.C. § 1981 claim arises under federal law. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367 because this claim is so related to the federal claim that it forms part of the same case or controversy. This Court also has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff is a citizen of Washington and Defendant is a citizen of California.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because

Defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3. Plaintiff Royer Ramirez Ruiz is a resident of the state of Washington.

4. Defendant Zoom Video Communications, Inc. (hereinafter "Zoom") is a California company doing business in Washington. Zoom is an employer under the Washington Law Against Discrimination ("WLAD"), RCW 49.60.

## FACTUAL BACKGROUND

5. Plaintiff was born in Mexico in 1995.

6. In 2001, Plaintiff was brought to the United States by his parents, who were in America on a tourist visa. He has remained a resident of the United States since that time. Although he is technically not a United States citizen, he considers himself an American.

7. In 2012, Plaintiff applied to the United States Department of Homeland Security ("DHS") to become a DACA (Deferred Action for Childhood Arrivals) recipient.

8. DACA applicants must undergo rigorous biographical and biometric background checks. To be considered, DACA applicants must meet the following criteria:

    a. Have entered the United States under the age of 16;

    b. Have continuously resided in the United States since June 15, 2007;

    c. Be currently enrolled in school, have graduated from high school, have obtained a general education development certificate, or have been honorably discharged from the U.S. Coast Guard or Armed Forces;

    d. Have not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or are otherwise not a threat to national security or public safety; and

    e. Have been under the age of 30 as of June 5, 2012.

MALONEY O'LAUGHLIN, PLLC
200 WEST MERCER STREET, STE. 506
SEATTLE, WA 98119
206.513.7485

9. Plaintiff's DACA application was approved on October 24, 2012, for a period of two years. Plaintiff has renewed his DACA status every two years since that time.

10. For each DACA renewal, DHS has issued Plaintiff an Employment Authorization Card, authorizing him to work in the United States. He is currently authorized to work in the United States until April 2022.

11. In 2017, Plaintiff obtained a bachelor's degree in applied mathematics with a minor in physics from the University of Central Arkansas, graduating with a 3.6 GPA.

12. Since graduating, Plaintiff has worked in the fields of software development and data engineering, including work as a DevOps engineer. DevOps is a set of practices which combines software development and information technology operations.

13. On or around July 20, 2021, Plaintiff was contacted over LinkedIn by Uthraa Manohar, a Technical Sourcer, regarding open engineering positions at Zoom. After confirming that Plaintiff was interested, Manohar invited Plaintiff to learn more about the positions and scheduled an initial interview with Zoom's Technical Recruiter, Farrah Fattal.

14. Manohar also checked whether Plaintiff needed any sponsorship to move forward. Plaintiff confirmed he did not need sponsorship.

15. On or around July 22, 2021, Plaintiff had an initial interview with Fattal. They discussed two open positions at Zoom; a SecOps ("security") engineering position and a MLOps ("machine learning") engineering position. Plaintiff indicated that he was more interested in the MLOps Engineering position. MLOps is a set of practices that combines machine learning, DevOps, and data engineering.

16. Fattal was managing interviews for the SecOps position, while her colleague, Russ Oeser, was managing interviews for the MLOps position. Fattal referred Plaintiff to Oeser.

17. Before forwarding Plaintiff's information to Oeser, Fattal asked the standard

1 HR questions regarding work authorization. Plaintiff confirmed that he was legally authorized to work in the US. Fattal then referred Plaintiff to Oeser for a follow up interview to discuss the MLOps Engineering position.

18. On or around July 26, 2021, Plaintiff had a video call with Oeser. They discussed the MLOps position and Oeser outlined how Plaintiff's current background made him an ideal candidate for the position. Oeser showed quite a bit of interest in having Plaintiff join the team.

19. As the call was wrapping up, Oeser asked Plaintiff if he needed sponsorship for the position. Just as Plaintiff had previously told Manohar and Fattal, he again confirmed that he did not need sponsorship and said he was legally authorized to work in the U.S.

20. Instead of dropping the matter, however, Oeser began asking follow-up questions about Plaintiff's immigration status. He questioned whether Plaintiff was a citizen, and when Plaintiff said he was not a citizen, he asked "if you are not a citizen, does this mean you are a permanent resident?"

21. Plaintiff continued to reassure Oeser that he was legally authorized to work in the U.S. and said that he was neither a citizen nor a resident. Despite this, Oeser continued to pressure Plaintiff to answer what kind of protected program he was under that granted him work authorization without being a citizen or a resident.

22. Plaintiff tried to dodge the question multiple times, not wanting to share his specific immigration status and knowing that at this point in the hiring process he was not required to share anything other than that he was legally authorized to work in the U.S.

23. As Oeser continued to pressure him, Plaintiff became worried that he would be dropped from the hiring process if he did not answer. Due to this fear and Oeser's continued questioning, Plaintiff informed him that he was part of DACA, a protected group in the U.S. that has work authorization.

24. Oeser responded "ooh, that might be an issue" and said he would check internally to make sure it would not be an issue before sending Plaintiff's resume to the hiring manager.

25. Plaintiff was upset by Oeser's response, but he was not concerned because, as he had stated to Oeser repeatedly, he had legal authorization to work in the U.S., and had held multiple jobs in the past without any issues.

26. On July 28, 2021, Plaintiff received an email from Oeser stating, "Hi Royer, does not look like we can move forward due to immigration. I can give you more information if you want to chat tomorrow."

27. Plaintiff was shocked and upset by this email, to the point that he was physically shaking. He had sacrificed a significant amount of time preparing for multiple rounds of interviews with Zoom and had never experienced such blatant discrimination in a professional setting before, making him feel disposable and worthless.

28. Plaintiff responded to Oeser's email within a few minutes, hoping to receive a quick response and explanation. He said, "Hi Russ, I'm definitely interested in understanding why my immigration status would disqualify me from this position. It has never been an issue in the past. I'm authorized to work in the US."

29. Plaintiff never received a response from Oeser or from Zoom.

**COUNT I – WLAD CITIZENSHIP/IMMIGRATION STATUS DISCRIMINATION**

30. Plaintiff realleges and incorporates by reference each and every averment of this Complaint as though fully set forth herein.

31. Plaintiff's status as a non-citizen immigrant, who is legally authorized to work in the United States, places him in a protected class.

32. Plaintiff was qualified for the MLOps position.

33. Defendant discriminated against Plaintiff because of his citizenship or immigration status when it rejected him for a job position solely on the basis of his citizenship or immigration status.

34. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages, including lost wages and emotional distress.

### COUNT II - ALIENAGE DISCRIMINATION (42 U.S.C. § 1981)

35. Plaintiff realleges and incorporates by reference each and every averment of this Complaint as though fully set forth herein.

36. Plaintiff's status as a non-citizen immigrant, who is legally authorized to work in the United States, places him in a protected class.

37. Plaintiff was qualified for the MLOps position.

38. Defendant discriminated against Plaintiff because of his citizenship or immigration status when it rejected him for a job position solely on the basis of his citizenship or immigration status.

39. Defendant discriminated against Plaintiff on the basis of alienage by denying him the right to make and enforce a contract for work because he is not a citizen, despite his legal authorization to work in the United States.

40. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered damages, including lost wages and emotional distress.

41. Defendant acted with malice or reckless disregard to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages in an amount that will punish Defendant and deter it and others from like conduct.

### REQUEST FOR RELIEF

42. Plaintiff Royer Ramirez Ruiz requests all damages allowable under Washington and federal law, including the following:

      a.    Compensatory damages, including lost wages and emotional distress damages;

      b.    Punitive damages;

      c.    Pre- and post-judgment interest;

      d.    Attorney's fees, costs, and expenses;

      e.    Any and all other and further relief this Court deems just and proper.

## JURY DEMAND

43.    Plaintiff demands a trial by jury on all triable issues.

Dated this 11th day of October, 2021.

                                        Respectfully submitted,

                                        By:   /s/ *Matt J. O'Laughlin*
                                                 Matt J. O'Laughlin, WSBA 48706
                                                 Amy K. Maloney, WSBA 55610
                                                 Maloney O'Laughlin, PLLC
                                                 200 W. Mercer Street, Ste. 506
                                                 Seattle, Washington 98119
                                                 Tel: 206.513.7485
                                                 Fax: 206.260.3231
                                                 matt@pacwestjustice.com
                                                 amy@pacwestjustice.com

                                                 ATTORNEYS FOR PLAINTIFF