1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROYER RAMIREZ RUIZ,

               Plaintiff,

     v.

ZOOM VIDEO COMMUNICATIONS
INC.,

             Defendant.

Case No. C21-1379-RSM-SKV

REPORT AND RECOMMENDATION

## INTRODUCTION

Defendant Zoom Video Communications, Inc. (Zoom) filed a Motion for Partial

Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 8.  Defendant argues

Plaintiff Royer Ramirez Ruiz fails to allege facts supporting his claim of unlawful discrimination

under 42 U.S.C. § 1981.[1]  Specifically, Defendant maintains Plaintiff's Complaint improperly

conflates the alienage discrimination prohibited under § 1981 with non-actionable discrimination

based on Plaintiff's immigration status.  Plaintiff rejects this contention in his opposition to the

motion to dismiss.  Dkt. 10.  The Court, having now considered Defendant's motion for partial

---

[1] The motion does not address Plaintiff's claim that Defendant violated the Washington Law Against Discrimination, RCW 49.60.

1  dismissal, briefing filed in support of and in opposition to the motion, and the remainder of the

2  record, recommends the motion be DENIED.

3                                                    BACKGROUND

4         Plaintiff was born in Mexico in 1995 and brought to the United States by his parents in

5  2001.  Dkt. 1, ¶¶5-6.  In October 2012, Plaintiff received approval to participate in the Deferred

6  Action for Childhood Arrivals (DACA) program.  *Id.*, ¶9.  Under DACA, the United States

7  government defers prosecution and removal under immigration laws of persons who came to the

8  United States as children without authorization to do so and who otherwise meet the

9  requirements for participating in the program.  *See, e.g.*, https://www.dhs.gov/publication/

10  exercising-prosecutorial-discretion-respect-individuals-who-came-united-states-children;

11  http://ucis.gov/DACA; and Dkt. 1, ¶8.  DACA recipients "enjoy no formal immigration status,"

12  but are considered "not to be unlawfully present in the United States because their deferred

13  action is a period of stay authorized by the Attorney General."  *Arizona Dream Act Coal. v.*

14  *Brewer*, 757 F.3d 1053, 1058-59 (9th Cir. 2014) (citations omitted).

15         Plaintiff has renewed his DACA status every two years.  Dkt. 1, ¶9.  Through each

16  renewal, he obtains an Employment Authorization Card.  *Id.*, ¶10.   The card, which must be

17  applied for in the DACA application process, allows a DACA recipient to work in the United

18  States.  *Arizona Dream Act Coal.*, 757 F.3d at 1059.  Plaintiff is currently authorized to work

19  through April 2022.  Dkt. 1, ¶10.

20         In 2017, Plaintiff earned a bachelor's degree in applied mathematics with a minor in

21  physics, and he thereafter worked in the fields of software development and data engineering,

22  including work as a DevOps engineer.  *Id.*, ¶¶11-12.  On or around July 20, 2021, Uthraa

23

1  Manohar, a Technical Sourcer at Zoom, contacted Plaintiff over LinkedIn regarding open

2  engineering positions. *Id.*, ¶13. After confirming Plaintiff's interest, Manohar scheduled

3  Plaintiff for an initial interview with Zoom's Technical Recruiter, Farrah Fattal. *Id.* Manohar

4  also inquired and Plaintiff confirmed he did not need any sponsorship to move forward. *Id.*, ¶14.

5       Plaintiff interviewed with Fattal some two days later. *Id.*, ¶15. They discussed two

6  open engineering positions at Zoom, in SecOps ("security") and MLOps ("machine learning").

7  *Id.* Given Plaintiff's greater interest in MLOps, Fattal referred him to Russ Oeser, the individual

8  managing interviews for that position. *Id.*, ¶16. Fattal also confirmed with Plaintiff that he was

9  legally authorized to work in the United States. *Id.*, ¶17.

10      Oeser discussed the MLOps position with Plaintiff in a video call on or around July 26,

11 2021. *Id.*, ¶18. Oeser indicated Plaintiff's background made him an ideal candidate and

12 "showed quite a bit of interest in having Plaintiff join the team." *Id.* Oeser also asked if Plaintiff

13 needed sponsorship for the position and Plaintiff confirmed he did not need sponsorship and was

14 authorized to work in the United States. *Id.*, ¶19. Oeser continued to ask questions about

15 Plaintiff's status, questioning whether Plaintiff was a citizen or permanent resident. *Id.*, ¶20.

16 Plaintiff informed Oeser he is neither a citizen, nor a resident, but is legally authorized to work,

17 and Oeser inquired as to the "kind of protected program" that provided Plaintiff work

18 authorization. *Id.*, ¶21. Fearing he would be dropped from the hiring process if he did not

19 answer, Plaintiff informed Oeser of his DACA status. *Id.*, ¶¶21-23. Oeser responded, "'ooh,

20 that might be an issue' and said he would check internally to make sure it would not be an issue

21 before sending Plaintiff's resume to the hiring manager." *Id.*, ¶24.

22      On July 28, 2021, Plaintiff received an email from Oeser stating, "'Hi Royer, does not

23 look like we can move forward due to immigration. I can give you more information if you want

to chat tomorrow.'" *Id.*, ¶26.  Plaintiff promptly responded to the email, stating he was

interested in understanding why his immigration status would disqualify him, that it had never

been an issue in the past, and that he was authorized to work in the United States.  *Id.*, ¶28.  He

did not receive a response from Oeser or hear from anyone else at Zoom.  *Id.*, ¶29.

DISCUSSION

A.    <u>Legal Standard</u>

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

which relief may be granted.  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  Dismissal may be based on either the lack of a cognizable legal theory or

absence of sufficient facts alleged under such a theory.  *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990).  The Court accepts all facts alleged in the complaint as true and

makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside*

*Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted).

B.    <u>Defendant's Motion to Dismiss</u>

Section 1981 prohibits discrimination on the basis of race in making and enforcing

contracts, including employment contracts.  42 U.S.C. § 1981(a) ("All persons within the

jurisdiction of the United States shall have the same right in every State and Territory to make

and enforce contracts . . .  as is enjoyed by white citizens.")  While primarily considered in the

context of racial discrimination, § 1981 also protects against discrimination based on alienage,

meaning non-citizen status.  *Sagana v. Tenorio*, 384 F.3d 731, 738-39 (9th Cir. 2004).  "To

prevail [on a § 1981 claim], a plaintiff must initially plead and ultimately prove that, but for

[non-citizenship, plaintiff] would not have suffered the loss of a legally protected right."
*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, __ U.S. __, 140 S. Ct. 1009, 1019, 206
L. Ed. 2d 356 (2020).

Defendant asserts that Plaintiff here alleges discrimination based only on his immigration
status as a DACA recipient, not due to his status as a non-U.S. citizen. *See* Dkt. 1, ¶¶26, 28
(alleging Oeser stated Plaintiff's application could not "move forward due to immigration" and
that Plaintiff did not know why his "immigration status would disqualify [him] from this
position.") Defendant cites to case law as supporting its contention that discrimination based on
immigration status is not actionable as alienage discrimination under § 1981. *See Vaughn v. City
of New York*, C06-6547, 2010 WL 2076926, at *10 (E.D.N.Y. May 24, 2010) ("[A]lienage
discrimination is discrimination on the basis of citizenship, not immigrant status. Discrimination
on the basis of a person's status as an immigrant to the United States is not alienage
discrimination unless it is also motivated by the lack of U.S. citizenship."); *see also Ofoche v.
Apogee Med. Grp., Virginia, P.C.*, C18-0006, 2019 WL 254674, at *2 (W.D. Va. Jan. 17, 2019)
(finding plaintiff with an H-1B visa to present a "a case of immigration discrimination – a class
of discrimination that is not outlawed by either Title VII or § 1981."), *aff'd*, 815 F. App'x 690
(4th Cir. 2020); *de Reyes v. Waples Mobile Home Park Ltd. P'ship*, 251 F. Supp. 3d 1006, 1022
(E.D. Va. 2017) (§ 1981 did not prohibit discrimination resulting from "status as illegal aliens,
not because they were non-citizens."), *vacated on other grounds and remanded sub nom. Reyes
v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415 (4th Cir. 2018); *Talwar v. Staten Island
Univ. Hosp.*, C12-0033, 2014 WL 5784626, at *7 (E.D.N.Y. Mar. 31, 2014) (discharge for
failure to obtain a required license was not alienage discrimination because ineligibility to obtain
license was due to immigration status, not lack of citizenship), *aff'd in part and vacated in part*

*on other grounds*, 610 F. App'x 28 (2d Cir. 2015). Defendant further argues any alleged

alienage discrimination contradicts Plaintiff's factual allegations that Zoom took his application

seriously and continued the interview process despite knowing he was not a U.S. citizen, *see*

Dkt. 1, ¶¶13-24, thereby necessitating dismissal under Rule 12(b)(6). *Resendiz v. Exxon Mobil*

*Corp.*, C20-0692, 2021 WL 4444718, at *4-7 (E.D.N.C. Sept. 28, 2021) (distinguishing

immigration status from alienage and finding no plausible allegation of alienage discrimination

where defendant knew plaintiff was a non-citizen on hiring and only rescinded an offer when it

learned his work authorization under DACA was temporary).

Defendant contends an interpretation of § 1981 to cover immigration status has no basis

in the statute's text and conflicts with the Immigration Reform Control Act (IRCA), 8 U.S.C. §

1324b. *See* Dkt. 8 at 10-11. It denies § 1981's protections extend to non-citizens who may

possess legal work authorization, but were not lawfully admitted to the United States. *Id.* at 11-

12. It also observes that DACA work authorization is temporary and that the very existence of

the DACA program is under challenge. *See Texas v. United States*, No. C18-0068, 2021 WL

3025857 (S.D. Tex. July 16, 2021), *appeal docketed*, No. 21-40680 (5th Cir. Sept. 16, 2021).

Plaintiff rejects Defendant's limited reading of his complaint as a mischaracterization of

his allegations. Plaintiff further maintains that the text of the statute, legislative history, and case

law demonstrate immigration status and non-citizenship are synonymous in relation to § 1981.

*See* Dkt. 10. He points to case law both finding § 1981's protection against alienage

discrimination to extend to DACA recipients and rejecting the alleged absence of a violation

where only certain categories of non-citizens are impacted. *See Juarez v. Soc. Fin., Inc.*, C20-

3386, 2021 WL 1375868, at *6-7 (N.D. Cal. Apr. 12, 2021) (where § 1981 extends to "'all

persons'" within the jurisdiction of the United States, the Supreme Court has interpreted "all

persons" to include "all lawfully present immigrants[,]" and DACA recipients are considered

lawfully present, discrimination "against only a subset of lawfully present immigrants" did not

"somehow insulate" the defendant's policies from scrutiny under § 1981) (citations omitted);

*Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1315-24 (S.D. Fla. 2020) ("Because

the text and legislative history of Section 1981 confirm that the statute's protection against

employer alienage discrimination applies to all work-authorized immigrants, and that Congress

did not express a clear intent to exclude subclasses of immigrants from its protection, the Court

concludes that DACA recipients are not excluded from Section 1981's protections."), *motion to*

*certify appeal denied*, 499 F. Supp. 3d 1202 (S.D. Fla. 2020).  *See also Peña v. Wells Fargo*

*Bank, N.A.*, C19-4065, 2019 WL 7050148, at *2 (N.D. Cal. Dec. 23, 2019) (because § 1981

protects those, like DACA recipients, lawfully present in the United States, the denial of an auto

loan application "allegedly based on a requirement that plaintiff's DACA status not expire

during the . . . loan period, constitutes a violation of § 1981."); *Juarez v. Nw. Mut. Life Ins. Co.*,

69 F. Supp. 3d 364, 368-69 (S.D.N.Y. 2014) (allegation that persons without green cards were

denied employment sufficed to state a claim because § 1981 applies to all those lawfully present,

plaintiff need not allege discrimination against all members of a protected class, and may plead

intentional discrimination by alleging defendant "acted pursuant to a facially discriminatory

policy requiring adverse treatment based on a protected trait.")[2]

       Plaintiff further describes as analogous cases involving other types of "but for" and/or

"proxy" discrimination.  *See* Dkt. 10 at 15-19.  He denies any conflict with the IRCA and

---

[2] The district court in *Juarez* certified the case for an interlocutory appeal, *Juarez v. Nw. Mut. Life Ins. Co.*, C14-5107, 2014 WL 12772237, at *2 (S.D.N.Y. Dec. 30, 2014), but thereafter entered the parties' stipulated voluntary dismissal, *id.*, slip op. (Dkt. 69) (June 1, 2015).

disputes Defendant's contention that § 1981 only protects persons lawfully admitted to the United States. *Id*. at 19-24.

Courts are, as reflected above, conflicted about the arguments raised by the parties herein. This Court only recently addressed a § 1981 claim brought by a DACA recipient and alleging differential treatment of DACA recipients and other non-citizens in relation to consumer loans. *Garcia v. Harborstone Credit Union*, C21-5148-BHS, 2021 WL 3491745, at *1 (W.D. Wash. Aug. 9, 2021). In *Garcia*, the plaintiff and putative class representative alleged that, upon presentation of his Social Security card indicating validity for work only with DHS authorization, he was deemed unacceptable for financing and denied a loan. *Id*. Seeking dismissal under Rule 12(b)(6), defendant contended plaintiff alleged only permissible immigration status-based discrimination. *Id*. at *2. The Court reasoned that, while the facts described plaintiff's particular experience as based on his DACA status, they did not preclude him from "plausibly stating a claim on behalf of non-citizens, a larger group of which he is also a member." *Id*. That is, plaintiff plausibly alleged a policy and practice of refusing to extend credit to non-citizens, including DACA recipients, in violation of § 1981. *Id*.

The Court in *Garcia* also found defendant's argument that it only considered immigration status and did lend to non-citizen permanent residents to raise a factual defense not properly resolved on a motion to dismiss. *Id*. at *2-3 (also rejecting argument on unrelated ground). It acknowledged other courts had found particular allegations of discrimination based on immigration status not actionable as alienage discrimination under § 1981. *Id*. at *3 (discussing *Talwar*, 2014 WL 5784626, at *7, and *Ofoche*, 2019 WL 254674, at *4). The Court found it unclear whether rejection of Social Security numbers "'like'" plaintiff's showed only discrimination based on immigration status, rather than alienage, and concluded factual

development could help it analyze the alleged discrimination's motivation. *Id.* (citing *Vaughn*, 2010 WL 20776926, as reasoning that discrimination based on immigration status must be motivated in part by a lack of citizenship to be alienage discrimination).

Defendant argues *Garcia* supports its position by acknowledging the distinction between immigration status discrimination and alienage discrimination, and distinguishes the outcome of the motion to dismiss in that case as based on the facts at issue. Defendant contends that, while *Garcia* alleged only the use of his DACA status as a means of identifying him as a non-citizen, rather than the reason for denying him a loan, Plaintiff herein fails to plausibly allege discrimination because he is a non-citizen and identifies facts directly contradicting such a claim. The Court, however, finds the decision in *Garcia* to support a different conclusion.

This matter comes before the Court on a Rule 12(b)(6) motion to dismiss. The Court must, as such, accept all facts alleged in the complaint as true and draw all inferences in the light most favorable to Plaintiff. *Baker*, 584 F.3d at 824. The Court, in so doing, finds the Complaint not limited to facts supporting a claim of discrimination based solely on Plaintiff's DACA status. Plaintiff alleges the interview process included repeated questions about and discussions of his citizenship status, *see* Dkt. 1, ¶¶ 14, 17, 19-24, and alleges discrimination based on alienage "because he is not a citizen, despite his legal authorization to work in the United States." *Id.*, ¶¶ 26-39 (also alleging his "status as a non-citizen immigrant, who is legally authorized to work in the United States, places him in a protected class[,]" and that he was discriminated against "because of his citizenship or immigration status when it rejected him for a job position solely on the basis of his citizenship or immigration status.") The fact that Plaintiff's conversation with one Zoom employee focused in particular on Plaintiff's status as a DACA recipient does not foreclose that citizenship was not at issue. The Court, as in *Garcia*, finds dismissal under Rule

1   12(b)(6) premature and further factual development necessary prior to consideration of

2   Plaintiff's claim.

3          The Court also notes that several cases relied upon by Defendant in support of its

4   contention regarding immigration status in relation to § 1981 addressed motions for summary

5   judgment, not motions to dismiss, and considered different and factually developed claims.  In

6   *Vaughn*, the case Defendant deems particularly instructive on the distinction between

7   immigration status and alienage, the court made its observation in the context of distinguishing

8   between alienage discrimination and national origin discrimination.  *Vaughn*, 2010 WL 2076926,

9   at *10 (citing *Ayiloge v. City of New York*, C00-5051, 2002 WL 1424589, at *16 (S.D.N.Y. June

10  28, 2002) ("Alienage discrimination must be distinguished from national origin discrimination,

11  which is based solely [on] an individual's birthplace or nation of origin, and is not prohibited by

12  § 1981."))[3]  In *Talwar*, 2014 WL 5784626 at *7-8, the court considered evidence refuting the

13  claim an employer treated citizen employees more favorably than non-citizens.  The Court found

14  the plaintiff's claim undercut by her own testimony she was terminated only after she

15  complained about her salary and that her employer did not suddenly, after a longstanding

16  amicable relationship, develop a dislike for her because she was a non-citizen.  *Id*.  In *de Reyes*,

17  the evidence showed male Latino plaintiffs faced increased rent and eviction not because they

18  were Latino or non-citizens, but because they wished to reside with their wives, none of whom

19

20          [3] Other courts have similarly distinguished *Vaughn*.  *See Juarez*, 69 F. Supp. 3d at 371, n. 11
21  (distinguishing the facts from *Vaughn* in that "there is no question that the alleged policy classifies people
    on the basis of alienage rather than national origin."); *Rodriguez*, 499 F. Supp. 3d at 1211 (stating
    "*Vaughn* makes clear that discriminating against employees because they came from a certain country or
22  region is not by itself a form of alienage discrimination[,]" but "did not address if discrimination against
    DACA recipients, or other immigrant statuses, is legally distinct from alienage discrimination."; also
23  finding *Vaughn* distinguishable in not involving "a policy that categorically excludes all work-authorized
    non-citizens, except for a few subclasses[,]" and stating "cases that have considered this issue have
    uniformly concluded that such policies are discriminatory on the basis of alienage.")

1   had any status in which they could be considered lawfully present in the United States. *de Reyes*,

2   251 F. Supp. 3d at 1016, 1021-22 ("[A]ny burden or barrier the female plaintiffs faced was the

3   result of their status as illegal aliens, not because they were non-citizens. And § 1981 does not

4   prohibit this.") (citing *Anderson v. Conboy*, 156 F.3d 167, 180 (2d Cir. 1998) (noting that § 1981

5   permits discrimination on the basis of unlawful presence in the United States)).[4]

6   The Court, in sum, finds Plaintiff's allegations sufficient to state a claim and to withstand

7   Defendant's motion to dismiss.  The Court thus declines to herein consider the arguments raised

8   by the parties in relation to immigration status and alienage under § 1981.

9   <u>CONCLUSION</u>

10   For the reasons discussed above, Defendant's Motion for Partial Dismissal Pursuant to

11   Federal Rule of Civil Procedure 12(b)(6), Dkt. 8, should be DENIED.  The Clerk is directed to

12   send copies of this order to the parties and to the Honorable Ricardo S. Martinez.

13   <u>OBJECTIONS</u>

14   Objections to this Report and Recommendation, if any, should be filed with the Clerk and

15   served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

16   Recommendation is signed.  Failure to file objections within the specified time may affect your

17   right to appeal.  Objections should be noted for consideration on the District Judge's motions

18   calendar for the third Friday after they are filed.  Responses to objections may be filed within

19   **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be

20

21   ⁴ Two cases cited by Defendant did involve motions to dismiss. *See Ofoche*, 2018 WL 4512076,
     and *Resendiz*, 2021 WL 4444718.  However, while distinguishing between immigration status and

22   alienage, the plaintiff in *Ofoche* did not raise a § 1981 claim based on alienage; he alleged race
     discrimination under § 1981 and race and national original discrimination under Title VII.  *See Ofoche*,

23   2018 WL 4512076, at *2-3, and 815 F. App'x at 692 (rejecting plaintiff's attempt to assert claim for
     alienage discrimination under § 1981 on appeal because he had not alleged any such claim in either his
     original or amended complaint and "admitted as much during a hearing before the district court.")

ready for consideration by the District Judge on **February 18, 2022**.

Dated this 1st day of February, 2022.

S. KATE VAUGHAN
United States Magistrate Judge